IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN VALADEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-3645 |
| | § | |
| TIER 1 COMPLETIONS SOLUTIONS, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Juan Valadez ("Plaintiff") files this Complaint against Tier 1 Completions Solutions, Inc. ("Defendant"), showing in support as follows:

## I.   NATURE OF THE CASE

1. This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's failure to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 during each seven-day workweek as an employee of Defendant.

2. Plaintiff seeks all damages available under the FLSA, including unpaid overtime wages, liquidated damages, reasonable legal fees, costs, and post-judgment interest.

## II.   THE PARTIES, JURISDICTION, AND VENUE

**A.   Plaintiff Juan Valadez**

3. Plaintiff is a natural person who resides in Henderson County, Texas. He has standing to file this lawsuit.

4. By filing this lawsuit and complaint, Plaintiff consents to be a party plaintiff to this FLSA action pursuant to 29 U.S.C. § 216(b).

**B.**   **Defendant Tier 1 Completions Solutions, Inc.**

5. Defendant is a foreign for-profit corporation. Defendant is incorporated under the laws of the state of Delaware.

6. Defendant is registered with the Texas Secretary of State to transact business in Texas. During 2022, 2023, and 2024, Defendant transacted business in Texas.

7. Defendant's principal place of business is at 1221 McKinney Street, Suite 4100, Houston, Texas 77010.

8. During 2022 and 2023 Defendant was an "enterprise engaged in commerce" as defined by the FLSA.

9. During 2024 Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

10. During 2022, 2023, and 2024, Defendant employed, and continues to employ, two or more employees.

11. During 2022, 2023, and 2024, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person. Examples of such goods and/or materials include computers, computer accessories, phones, personal protection equipment, wireline equipment, and completion equipment.

12. On information and belief, Defendant has had annual gross sales or business volume in excess of $500,000 during the following years –2022, 2023, and 2024.

13. Defendant may be served with summons through its registered agent, Capitol Corporate Services, Inc., 1501 South Mopac Expressway, Suite 220, Austin, Texas 78746.

**C.**   **Jurisdiction and Venue**

14. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

15. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

16. During all times relevant to this lawsuit, Defendant has transacted business in the State of Texas and continues to transact business in the State of Texas.

17. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely the FLSA.

18. Venue is proper in this Court because Defendant's principal place of business is located within this Judicial District and Division.

### III.   FACTUAL BACKGROUND

19. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

20. Defendant is an oilfield services business that provides wireline services, completion products, and other oilfield related services and products. Defendant provides those services and products in Texas and states other than Texas, including Oklahoma and New Mexico.

21. Plaintiff was employed by Defendant from approximately July 5, 2022 to approximately July 17, 2024.

22. Defendant employed Plaintiff as an operator.

23. Plaintiff's primary job duties as an employee of Defendant were manual labor in nature.

24. Plaintiff's primary job duties working for Defendant at oilfield locations, such as oil and/or natural gas well sites, included handling oilfield equipment and/or products, inspecting oilfield wireline and completion related equipment and/products, performing repairs on oilfield

wireline and completion related equipment and/or products, and rigging wireline related equipment and/or products.

25. Defendant paid Plaintiff on an hourly basis.

26. Plaintiff's base hourly rate of pay as an employee of Defendant was generally $23 per hour.

27. In addition to hourly pay, Defendant also paid Plaintiff incentive based bonus pay.

28. Plaintiff worked for Defendant in Texas and states other than Texas. States other than Texas where Plaintiff performed work for Defendant include Oklahoma and New Mexico. When working in Texas, Plaintiff primarily worked in West Texas in the Permian Basin.

29. Plaintiff typically worked hitches for Defendant that were generally two weeks on and one week off.

30. Plaintiff's permanent home address when he was employed by Defendant was 1406 Aspin Street, Henderson, Texas 75652.

31. When Plaintiff was working a hitch for Defendant, he resided at a hotel or man camp provided by Defendant or Defendant's customers.

32. Plaintiff's work for Defendant routinely required him to be away from his permanent home address for many consecutive days at a time.

33. While working a hitch at an oilfield location, Plaintiff generally began a normal workday at approximately 4:00 a.m.

34. While working a hitch at an oilfield location, Plaintiff generally ended a normal workday at approximately 7:00 p.m.

35. While working a hitch, Plaintiff routinely worked five or more consecutive days at a time.

36. Prior to beginning a hitch, Plaintiff drove from his permanent home address to the hotel or man camp where he temporarily resided when working a hitch for Defendant. Plaintiff typically began that drive during what would be normal working hours if it were a scheduled workday. As the drive time was routinely many hours, Plaintiff generally left in the morning at a time after 4:00 a.m.

37. Upon conclusion of a hitch, Plaintiff would typically leave the hotel or man camp the day after conclusion of work at the oilfield location and drive back to his permanent home address. When Plaintiff drove back home the day after conclusion of work at the oilfield location, he typically began that drive during what would be normal working hours if it were a scheduled workday. As the drive time was routinely many hours, Plaintiff generally left in the morning at a time after 4:00 a.m.

38. Plaintiff's travel between his permanent home address and his assigned hotel or man camp for a given hitch typically cut across Plaintiff's normal working hours during nonworking days. At times, that drive time cut across Plaintiff's normal working hours during working days.

39. Defendant did not treat Plaintiff's travel time between his permanent home address and his assigned hotel or man camp for a given hitch as compensable time.

40. Plaintiff routinely worked more than 40 hours per seven-day workweek as an employee of Defendant.

41. Defendant did not pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in each and every seven-day workweek. While Defendant paid Plaintiff some overtime pay, it did not include compensable travel time in the calculation of Plaintiff's overtime hours worked.

## IV.     CONTROLLING LEGAL RULES

42.    The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

43.    "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

44.    "Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days." 29 C.F.R. § 785.39.

45.    Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

46.    An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Community Health Services, Inc.*, 3:13-CV-1976-P, 2016 WL 4801306, at *2 (N.D. Tex. Feb. 5, 2016) (*citing Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

47. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton*, 47 F.3d at 748.

48. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Among other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

49. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

50. Failing to pay the required overtime premium for hours worked over 40 in a seven-day workweek is a violation of the FLSA. 29 U.S.C. § 216(b).

### V.     FLSA CLAIMS

51. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

52. Plaintiff was employee of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

53. Defendant was an eligible and covered employer under the FLSA relative to Plaintiff's employment with Defendant. 29 U.S.C. § 203(d).

54. Defendant is and/or has been an enterprise engaged in commerce under the FLSA in 2022, 2023 and 2024. 29 U.S.C. § 203(s)(1)(A).

55. Plaintiff was a covered employee under 29 U.S.C. § 207(a)(1) relative to his employment with Defendant.

56. Plaintiff was routinely and regularly engaged in commerce while performing work for Defendant. 29 U.S.C. § 207(a)(1).

57. Plaintiff routinely worked in excess of 40 hours per seven-day workweek as an employee of Defendant. However, Defendant did not pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in each and every seven-day workweek when Plaintiff was employed by Defendant.

58. The failure of Defendant to pay Plaintiff time and one-half his regular rate of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

59. Defendant's violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant is and was aware that Plaintiff was not paid time and one-half his regular rate of pay for all hours worked over 40 in a seven-day workweek. During Plaintiff's employment with Defendant, Defendant was aware Plaintiff's travel time was not compensated.

60. Plaintiff seeks all damages available for Defendant's failure to timely pay all him all FLSA overtime wages owed.

## VI.     JURY TRIAL DEMAND

61. Plaintiff demands a trial by jury.

## VII. DAMAGES AND PRAYER

62. Plaintiff asks that he be awarded a judgment against Defendant and/or order(s) from the Court for the following:

   a. All damages allowed by the FLSA, including unpaid overtime wages,

   b. Liquidated damages in an amount equal to unpaid overtime wages,

   c. Reasonable legal fees,

   d. Costs,

   e. Post-judgment interest, and/or

   f. All other relief to which Plaintiff is entitled.

Date: September 25, 2024

.

        Respectfully submitted,

By:    s/ Allen R. Vaught
       Allen R. Vaught
       Attorney-In-Charge
       TX Bar No. 24004966
       SD TX Bar No. 22757
       Vaught Firm, LLC
       1910 Pacific Ave., Suite 9150
       Dallas, Texas 75201
       (972) 707-7816 – Telephone
       (972) 591-4564 – Facsimile
       avaught@txlaborlaw.com

ATTORNEY FOR PLAINTIFF